**CHURCHILL FORGE, INC., Appellant,**

v.

**Joann Hamilton BROWN, Appellee.**

**No. 03–99–00031–CV.**

Court of Appeals of Texas, Austin.

Nov. 18, 1999.

Released for Publication Nov. 29, 2001.

Archie Carl Pierce, Mike Thompson, Jr., Wright & Greenhill, P.C., Austin, for appellee.

R. David Fritsche, Law Offices of R. David Fritsche, San Antonio, Douglas B. Lang, W. Ross Forbes, Jr., Cozen and O'Connor, P.C., Dallas, for appellant.

Before Chief Justice ABOUSSIE, Justices KIDD and PATTERSON.

ABOUSSIE, Chief Justice.

Churchill Forge, Inc. appeals the summary judgment granted in favor of Joann Hamilton Brown in its suit seeking reimbursement for repairs to residential rental property. We will affirm the summary judgment.

**Background and Procedural History**

On September 19, 1995, Joann Hamilton Brown (Brown) co-signed a lease with her adult son, Carl Jeffrey Brown, for an apartment in Remington House Apartments. Although Brown signed the lease beneath a heading entitled "Resident or Residents," she never lived in the apartment with Carl. On March 29, 1996, a fire which allegedly originated in Carl's apartment caused damage to the apartment complex. Churchill Forge, Inc., owner of the Remington House Apartments, sued Brown [1] for breach of lease [2] based on the following reimbursement clause in the lease:

> REIMBURSEMENT: You must promptly reimburse us for loss, damage, or cost of repairs or service caused anywhere in the apartment community by your or any guest's or occupant's improper use or negligence. Unless the damage or stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and

---

1. Churchill sued Carl; however, he is not a party to this appeal.

2. Churchill also sued Brown for negligence but the summary judgment order states that Churchill dismissed its negligence cause of action. Only the issue of breach of lease is before this Court.

(3) damages from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Any delay in our demanding sums you owe is not a waiver.

Brown moved for summary judgment contending she is not liable for breach of the lease. The trial court granted the summary judgment, and Churchill appeals.

### Discussion

We are guided by the well-established standards for reviewing summary judgments. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). A summary judgment is appropriate when there are no material fact issues and the movant is entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c). When a summary judgment is granted on general grounds we must consider on appeal whether any theory asserted by the movant will support the summary judgment. *Rogers v. Ricane Enters. Inc.,* 772 S.W.2d 76, 79 (Tex.1989). If any theory advanced is meritorious, the summary judgment will be affirmed. *Id.* The appellant must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 381 (Tex.1993).

We must determine first whether chapter 92 of the Texas Property Code governs Churchill's action, and if so, whether the lease provision satisfies the requirements of section 92.006(e). *See* Tex.Prop.Code Ann. § 92.006(e) (West 1995) ("Prop. Code").

### Application of Texas Property Code Chapter 92

Chapter 92 applies to the relationship between landlords and tenants of residential rental property. Prop.Code § 92.002. Subchapter B of chapter 92 covers conditions materially affecting the physical health and safety of the ordinary tenant, and prescribes the rights and duties of landlords and tenants regarding repairs. *See* Prop.Code §§ 92.006(c); .052, .054 & .056. Specifically, subchapter B identifies what a landlord is obligated to repair and when, and the remedies for a tenant if a landlord fails to make repairs. *See* Prop. Code §§ 92.052, .054 & .056. For example, a landlord must repair conditions caused by normal wear and tear, if the tenant notifies the landlord of the condition, is not delinquent on rent, and the condition materially affects the physical health and safety of the ordinary tenant. Prop.Code. § 92.052(a), (b). If a landlord is obligated to repair but does not, a tenant may terminate a lease or deduct the cost of repair from rent. *See, e.g.,* Prop. Code § 92.056(b)(1), (3). A landlord's duties and a tenant's remedies under Subchapter B cannot be waived except, as relevant in this case, by satisfying section 92.006(c). Prop.Code § 92.006(c). If a landlord and a tenant agree to shift to the tenant the expense and obligation to repair "any condition in subchapter B," all of the following conditions must be met:

(1) at the beginning of the lease term the landlord owns only one rental dwelling;

(2) at the beginning of the lease term the dwelling is free from any condition which would materially affect the physical health or safety of an ordinary tenant;

(3) at the beginning of the lease term the landlord has no reason to believe that any condition described in Subdivision (2) of this subsection is likely to occur or recur during the tenant's lease term or during a renewal or extension; and

(4) (A) the lease is in writing;

(B) the agreement for repairs by the tenant is either underlined or printed in boldface in the lease or in a separate written addendum;

(C) the agreement is specific and clear; and

(D) the agreement is made knowingly, voluntarily, and for consideration.

Prop.Code § 92.006(e).

Churchill contends first that chapter 92 does not apply to Brown's situation, and second, that the fire damage is not a condition covered by subchapter B. Thus, according to Churchill, the reimbursement provision of the lease is not subject to the requirements of chapter 92 and obligates Brown to reimburse Churchill for the cost of repairing the fire damage to the entire complex. Brown argues that chapter 92 applies and that the reimbursement provision does not comply with section 92.006(e) and is thus unenforceable. *See* Prop.Code § 92.006(e).

■ Churchill first argues that chapter 92 does not apply because Brown did not use the apartment as her permanent residence. Chapter 92 defines "tenant" as "a person who is authorized by the lease to occupy a dwelling to the exclusion of others and ... who is obligated under the lease to pay rent." Prop.Code § 92.001(6). "Dwelling" is defined as "one or more rooms rented for use as a permanent residence under a single lease to one or more tenants." Prop.Code § 92.001(1). Churchill argues that given the definition of "dwelling," chapter 92 does not protect Brown because *she* did not occupy the apartment as her permanent residence. We disagree. "Dwelling" requires that the leased space be used as *a* permanent residence. No one disputes that the subject apartment was occupied by Carl as his residence. As alleged by Churchill, Carl was a lessee and occupant of the apartment at all times material to the case. A "tenant" is one *authorized* to occupy a dwelling, not necessarily one who in fact occupies the dwelling. By signing the lease, Brown was authorized to occupy the apartment, even though she chose not to live there with her son. We reject Churchill's argument that chapter 92 requires the apartment to be Brown's permanent physical residence.

■ Churchill also argues that section 92.061 supports its position that chapter 92 does not apply. Section 92.061 provides:

The duties of a landlord and the remedies of a tenant under this subchapter are in lieu of existing common law and other statutory law warranties and duties of landlords for maintenance, repair, security, habitability, and nonretaliation, and remedies of tenants for a violation of those warranties and duties. Otherwise, this subchapter does not affect any other right of a landlord or tenant under contract, statutory law, or common law that is consistent with the purposes of this subchapter or any right a landlord or tenant may have to bring an action for personal injury or property damage under the law of this state.

Prop.Code § 92.061. Churchill maintains that section 92.061 limits the applicability of subchapter B, and indicates that Churchill's cause of action for property damages is not subject to the requirements of subchapter B.

Churchill relies on *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex.1998) and *Moreno v. Brittany Square Associates, L.P.*, 899 S.W.2d 261 (Tex.App.—Houston [14th Dist.] 1995, writ denied), as support for its position that chapter 92 does not apply to property damage cases. In *Moreno* and *Timberwalk*, both personal injury cases, neither tenant brought a claim pursuant to chapter 92 and neither attempted to invoke the

remedies of chapter 92 or subchapter B. Instead, the landlords sought to use chapter 92 as a shield from liability. *See Timberwalk*, 972 S.W.2d at 753–54; *Moreno*, 899 S.W.2d at 262. The respective courts explained that subchapter B governs disputes between landlords and tenants regarding property repairs and establishes the procedures for tenants and landlords regarding conditions that need to be repaired. *See Timberwalk*, 972 S.W.2d at 755; *Moreno*, 899 S.W.2d at 263. Relying on section 92.061, both courts concluded that subchapter B did not apply to the tenant's personal injury actions. *See Timberwalk*, 972 S.W.2d at 755 (error to instruct jury based on section 92.052); *Moreno*, 899 S.W.2d at 263 (plaintiff not required to comply with chapter 92 notice provisions). As pointed out in its brief, Churchill seeks to hold Brown responsible for repairing the apartment complex based exclusively on the lease reimbursement clause and not on a negligence theory. Chapter 92 expressly applies to disputes regarding repairs—precisely the dispute in this case. Accordingly, we reject Churchill's reliance on section 92.061.

In its second argument, Churchill contends that damage caused by a tenant is not a "condition covered by subchapter B," as required for the application of section 92.006(e). Subchapter B distinguishes conditions caused by a tenant[3] from those caused by something other than the tenant.[4] Based on this distinction, Churchill concludes that damages caused by a tenant are "expressly excluded" from subchapter B. We again disagree.

In its petition, Churchill complains of extensive damage to its apartment complex due to a fire started in the apartment Brown leased and seeks reimbursement for the repairs. As stated earlier, subchapter B was intended to govern disputes between a landlord and a tenant over repairs. *Timberwalk*, 972 S.W.2d at 755. In addition, section 92.054(a) of subchapter B includes conditions resulting from an insured casualty loss such as fire or smoke. Prop.Code § 92.054(a). By its terms, subchapter B applies to repairs regardless of the source. For problems caused by a tenant, subchapter B limits the obligations of the landlord to repair and the tenant's remedies. However, this "limitation" does not render subchapter B inapplicable or the tenant automatically responsible for the expense. By agreement, the landlord and tenant may shift to the tenant the obligation to pay for repairing the damage caused by the tenant if the lease provision meets the requirements of section 92.006(e). Because Churchill seeks reimbursement for the cost of repairs and damages due to fire, a condition expressly covered by subchapter B, we conclude subchapter B applies. Accordingly, the lease provision must satisfy the requirements in section 92.006(e) to be enforceable.

### Application of Section 92.006(e)

■ According to section 92.006(e), a lease provision that shifts the burden of repair from the landlord to the tenant

---

**3.** Although not relevant to this case, subchapter B also includes conditions caused by a lawful occupant in the tenant's dwelling, a member of the tenant's family or a guest or invitee of the tenant. *See* Prop.Code §§ 92.052, .054.

**4.** For example, section 92.052 bases the landlord's obligation to repair on conditions caused by normal wear and tear. *See* Prop. Code § 92.052(b). Section 92.054 differentiates casualty losses "not caused by the negligence or fault of the tenant, a member of the tenant's family, or a guest or invitee of the tenant ..." from casualty losses caused by negligence or fault. *See* Prop.Code § 92.054(b), (c).

must satisfy *all* requirements of the section. Prop.Code § 92.006(e). Because the trial court granted summary judgment without specifying the grounds, we must affirm the summary judgment if the lease provision failed to satisfy any one of section 92.006(e)'s requirements. *See State Farm Fire & Cas. Co.*, 858 S.W.2d at 380.

Churchill's lease provision reflects at least two deficiencies. Section 92.006(e) requires that the landlord own only one rental dwelling at the beginning of the lease term. Prop.Code § 92.006(e)(1). As stated earlier, "dwelling" means one or more rooms rented for use as a permanent residence under a single lease to one or more tenants. Prop.Code § 92.001(1). According to Churchill's discovery responses, it owned eighteen apartments in the building in which the fire occurred.

Section 92.006(e) also requires that the lease provision be in writing, and either underlined, printed in boldface or contained in a separate written addendum. Prop.Code § 92.006(e)(4). Here, the lease provision obligating the tenant to repair is not in bold print or in a separate addendum. According to the copy of the lease in the record, only the sentence which obligates the tenant to pay for repairs to doors, window, screens and wastewater stoppage is underlined. The first sentence, which Churchill contends broadly obligates the tenant to reimburse for loss, damage or cost of repairs or service caused anywhere the in apartment community, is not underlined. Moreover, the provision appears on page two of a six-page single-spaced typed and double column document. We conclude the lease provision does not meet section 92.006(e)(4)'s requirement of being conspicuous. *See id.*

### Conclusion

Having concluded that seeking reimbursement for repairs caused by fire damage is a condition covered by subchapter B, and that the lease provision does not satisfy the requirements of section 92.006(e), we hold that the lease provision is unenforceable. We overrule Churchill's sole issue and affirm the summary judgment.