**CHURCHILL FORGE, INC., Petitioner,**

v.

**JoAnn Hamilton BROWN, Respondent.**

No. 00–0270.

Supreme Court of Texas.

Argued Jan. 10, 2001.

Decided Nov. 15, 2001.

Rehearing Overruled Jan. 10, 2002.

Mark Thomas Zuniga, R. David Fritsche, Law Offices of R. David Fritsche, San Antonio, Douglas Bernard Lang, Cozen and O'Connor, Dallas, for Petitioner.

Archie Carl Pierce, Mike Thompson, Jr., Wright & Greenhill, Austin, for Respondent.

Justice ENOCH delivered the opinion of the Court, in which Justice HECHT, Justice OWEN, Justice JEFFERSON, and Justice RODRIGUEZ join.

The question in this case is whether by statute or the common law, a commercial landlord is prohibited from contractually obligating its tenant to be responsible for damages caused by the tenant, the tenant's occupant, or guest. In this case, JoAnn Brown co-signed a lease with her adult son, Carl Jeffrey ("Jeff"), for an apartment owned by Churchill Forge, Inc. Jeff allegedly caused a fire that extensively damaged the apartment complex. Churchill Forge sued JoAnn, asserting that the lease required her, as a cotenant, to pay for any damages resulting from Jeff's negligence. JoAnn defended, claiming that either the

Texas Property Code or this Court's fair notice doctrine prohibit Churchill Forge, as a commercial landlord, from contractually requiring her to pay for the alleged damage. The trial court granted summary judgment for JoAnn, and the court of appeals affirmed.[1] We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

■ Summary judgment is appropriate when there are no material fact issues and the movant is entitled to judgment as a matter of law.[2] Here, the lease JoAnn and Jeff signed provided:

> REIMBURSEMENT. You must promptly reimburse us for loss, damage, or cost of repairs or service caused anywhere in the apartment community by your or any guest's or occupant's improper use or negligence. *Unless the damage or stoppage* is *due to our negligence, we're* not liable for—*and you must pay for*—repairs, *replacement* costs and damage *to the following* if occurring *during the Lease Contract* term or *renewal period: (1) damage* to doors, windows, or *screens; (2) damage* from *windows or doors left open; and* (3) damages *from wastewater stoppages* caused by *improper objects in lines exclusively serving* your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Any delay in our demanding sums you owe is not a waiver.

The question is whether enforcing this provision is prohibited by either Texas Property Code section 92.006(e) or the fair notice doctrine. We note in this appeal that we are not deciding whether Jeff was

negligent, or whether he actually caused the fire. Those issues are not before us.

To begin, we observe that competent parties in Texas "shall have the utmost liberty of contracting."[3] JoAnn asserts that this principle has been altered by the Legislature and points to Chapter 92 of the Texas Property Code. We agree. Statutory limitations on the freedom of landlord and tenant to contract are contained in Subchapter A, section 92.006, entitled "Waiver or Expansion of Duties and Remedies." JoAnn argues that Churchill Forge cannot enforce the lease provision against her because it cannot meet the conditions of subsection (e). As to this interpretation, we disagree.

■ Subchapter A, section 92.006(e) reads:

> (e) A landlord and a tenant *may agree* for the tenant to repair or remedy, at the tenant's expense, any *condition covered by Subchapter B* if all of the following conditions are met:
>
> (1) at the beginning of the lease term the landlord owns only one rental dwelling;
>
> (2) at the beginning of the lease term the dwelling is free from any condition which would materially affect the physical health or safety of an ordinary tenant;
>
> (3) at the beginning of the lease term the landlord has no reason to believe that any condition described in Subdivision (2) of this subsection is likely to occur or recur during the tenant's lease term or during a renewal or extension; and
>
> (4) (A) the lease is in writing;

1. 60 S.W.3d 118.

2. Tex.R. Civ. P. 166a(c).

3. *Wood Motor Co., Inc. v. Nebel,* 150 Tex. 86, 238 S.W.2d 181, 185 (1951) (quoting *Printing & Numerical Registering Co. v. Sampson,* 19 L.R.-Eq. 462, 465 (1875)).

(B) the agreement for repairs by the tenant is either underlined or printed in boldface in the lease or in a separate written addendum;

(C) the agreement is specific and clear; and

(D) the agreement is made knowingly, voluntarily, and for consideration.[4]

Nothing in subsection (e) *prohibits* a landlord from contracting with its tenant for the tenant to be responsible for damages the tenant, the tenant's occupant, or guest causes. Subsection (e) only says that a landlord, meeting that section's requirements, *may* contract for the tenant to pay for certain repairs. Legislative permission to contract under certain circumstances does not necessarily imply that contracting under other circumstances is prohibited. Certainly, given this State's strong commitment to the principle of contractual freedom, we should hesitate to infer a general prohibition from a statutory clause granting specific permission to contract. Fortunately, we have no need to guess what the Legislature meant. The Legislature explicitly identified, in a clause preceding subsection (e), the prohibition it intended to enforce. That prohibition is found in section 92.006(c):

A landlord's duties and the tenant's remedies under Subchapter B, which covers conditions materially affecting the physical health or safety of the ordinary tenant, may not be waived except as provided in Subsections (d), (e), and (f) of this section.[5]

Thus a tenant's contractual agreement to bear the cost of repair must meet the requirements of subsection (e) when it would otherwise be prohibited as an impermissible waiver of the landlord's duties or the tenant's remedies under Subchapter B.

Property Code, Subchapter B landlord duties are found in section 92.052, which reads:

(a) A landlord shall make a diligent effort to repair or remedy a condition if:

. . . .

(3) the condition materially affects the physical health or safety of an ordinary tenant. [But,]

(b) Unless the condition was caused by normal wear and tear, the landlord *does not* have a duty ... to repair or remedy a condition caused by:

(1) the tenant;

(2) a lawful occupant in the tenant's dwelling;

(3) a member of the tenant's family; or

(4) a guest or invitee of the tenant.[6]

It appears then, that Subchapter B imposes no duty on Churchill Forge to bear the cost of repairing damage allegedly caused by Jeff. As well, a tenant's remedies under Subchapter B are conditioned upon the landlord's liability,[7] and the landlord's liability is conditioned upon the existence of a duty under Subchapter B.[8] Subchapter B therefore provides no remedy for JoAnn if Jeff damaged Churchill Forge's property. Because Churchill Forge has no duty to

---

4. TEX. PROP.CODE § 92.006(e) (emphasis added).

5. TEX. PROP.CODE § 92.006(c) (footnote omitted).

6. TEX. PROP.CODE § 92.052 (emphasis added).

7. *See* TEX. PROP.CODE § 92.056(e) ("a tenant to whom a landlord is liable ... may ..."); TEX. PROP.CODE § 92.0561(a) ("[i]f the landlord is liable to the tenant ...").

8. TEX. PROP.CODE § 92.056(a).

pay for repair of tenant-caused damages, and JoAnn has no remedy against Churchill Forge for such damages, sections 92.006(c) and (e) do not restrict the parties' freedom to contract as they wish concerning the matter.

This reading is consistent with section 92.061 of Subchapter B, which provides:

> The duties of a landlord and the remedies of a tenant under this subchapter are in lieu of existing common law [landlord duties and tenant remedies]. Otherwise, this subchapter does not affect any other right of a landlord or tenant under contract, statutory law, or common law that is consistent with the purposes of this subchapter. . . . [9]

Again, because under Subchapter B landlords have no duty to repair or pay to repair tenant-caused damage, and tenants have no remedy for such damage, section 92.061 makes clear that the Legislature did not intend the Subchapter to otherwise affect the parties' presumptive right to contract over who would be responsible for conditions caused by the tenant, the tenant's occupant, or guest.

Even if we were to infer, as JoAnn suggests, a general prohibition from subsection (e)'s permissive language, it would not apply to bar this lease provision. Subsection (e)'s reach is explicitly limited to conditions "covered by Subchapter B." As mentioned, Subchapter B establishes a landlord's duty to repair certain conditions not caused by the tenant, the tenant's lawful occupant, or guest. Because no duty is triggered when a tenant damages the rented dwelling, such damage would not be a condition "covered by Subchapter B" to which subsection (e)'s requirements would apply.

Looking at the remainder of section 92.006 supports our view. While subsection (e) permits, under certain circumstances, a small, one-unit landlord to contract with tenants over the cost of repairing conditions covered by Subchapter B, subsection (f) allows *any commercial landlord* to shift the cost of repairs to the tenant, with a sufficiently clear agreement, for three specific types of conditions.[10] The subsection (f) conditions are notable not because they are cheap to repair, but because they are conditions that would typically result from tenant negligence: "(1) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the tenant's dwelling; (2) damage to doors, windows, or screens; and (3) damage from windows or doors left open." [11] Subsection (f) conditions therefore resemble those tenant-caused conditions which a landlord has no duty to repair, or pay to repair, under Subchapter B.

But importantly, there is no requirement in subsection (f) for a landlord to prove that the tenant caused these damages before seeking reimbursement. Without showing that the damage was caused by the tenant, the landlord would otherwise have a duty to bear the cost of repair under Subchapter B. And under 92.006(c), that duty could not be waived. By adding subsection (f), the Legislature permitted landlords and tenants to bargain over who would bear the cost of repairing these specific conditions, typically tenant-caused, without requiring landlords to show that they were tenant-caused. In short, the Property Code not only permits the parties to contract over who will pay for repairs when the tenant causes dam-

---

**9.** TEX. PROP.CODE § 92.061.

**10.** TEX. PROP.CODE § 92.006(f).

**11.** *Id.*

age, it specifically authorizes the parties to shift by contract costs of repairs for certain damages from the landlord to the tenant irrespective of whether the damage was caused by the tenant.

■ Taken together, subsections (c) and (e) dictate that a commercial landlord cannot ask a tenant to pay for repairs that the landlord has the duty to make. Excepted from that dictate is subsection (f), under which there are three specific kinds of repairs that the parties can, by contract, shift the duty to pay for from the landlord to the tenant. The agreement must be conspicuous, clear, and voluntary, but the responsibility shifting can occur, regardless of whether the damages were caused by the tenant. And not covered by that dictate are those agreements between the parties concerning damages for which the landlord has no duty to repair, i.e., tenant-caused damages. Nothing in the Property Code restricts the parties' freedom to negotiate over who will pay for repair of damages negligently or intentionally caused by the tenant, the tenant's occupant, or guest.

■ JoAnn alternatively argues that the circumstance here is a casualty loss that must be treated differently from other conditions the landlord has a duty to repair. But Subchapter B does not distinguish between casualty losses and other conditions in determining whether the landlord has a duty to repair. Yet, though Churchill Forge had no duty to repair the damage, JoAnn contends that public policy supports restricting landlords' contract rights through applying section 92.006(e)'s

requirements to all casualty-loss reimbursement provisions such as the lease provision here. The State's public policy, however, is reflected in its statutes.[12] In Subchapter B, the Legislature expressly absolved landlords of any duty to repair occupant-caused conditions. Absent that duty, nothing in the statute expresses a policy against tenants being held responsible for damages they or their cotenants cause. Additionally, no common law principle suggests that JoAnn should not be liable for damages negligently caused by one possessing the premises with her consent.[13] This is consistent with the Restatement, which "takes the position that the tenant should be liable for damage done to the premises by those who are on the property with his consent. . . ."[14] The statute, common law, and Restatement are in harmony on this point: there is nothing extraordinary or unjust in requiring a tenant to reimburse the landlord for damages negligently caused by the tenant or one occupying the premises with the tenant's consent. Public policy does not restrict a landlord and tenant from agreeing that the tenant will be responsible for damages the tenant or cotenant causes.

■ Finally, JoAnn asserts that this Court's fair notice doctrine supports the appellate court's judgment. Under the fair notice doctrine, "certain contractual provisions relieving a party in advance for its own negligence must be unambiguous and conspicuous."[15] The doctrine's definition makes clear that it only applies when a party seeks release or indemnity from

---

**12.** See Lawrence v. CDB Servs., 44 S.W.3d 544, 555 (Tex.2001).

**13.** See, e.g., Publix Theatres Corp. v. Powell, 123 Tex. 304, 71 S.W.2d 237, 241 (1934) (noting that lessee who surrendered possession of premises to third party had same

rights and liabilities as third party whose negligence caused fire).

**14.** RESTATEMENT (SECOND) OF PROPERTY § 12.2 reporter's note 7 (1977).

**15.** Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 386 (Tex.1997).

the consequence of its own negligence.[16] The provision in this case does not attempt to shift responsibility to the tenant for any negligence by the landlord. The fair notice doctrine does not apply.

Because any restriction of landlord-tenant contract rights under section 92.006(e) is activated only by section 92.006(c)'s prohibition against the tenant waiving a landlord's duty to repair imposed by Subchapter B, and because the fair notice doctrine does not apply, we conclude that JoAnn Brown is not entitled to judgment against Churchill Forge as a matter of law. Accordingly, we reverse the court of appeals' judgment against Churchill Forge and remand the case to the trial court for further proceedings.

Justice HANKINSON filed a dissenting opinion, in which Chief Justice PHILLIPS, Justice BAKER, and Justice O'NEILL joined.

Because I disagree with the Court's interpretation of Property Code § 92.006, I cannot join the Court's opinion or judgment in this case, and would affirm the court of appeals' judgment that Churchill Forge take nothing from JoAnn Brown. Contrary to the Court's view, the Legislature has in fact clearly limited the circumstances under which landlords and tenants may contract for tenants to be responsible for conditions affecting habitability. As I explain below, the Court's interpretation of section 92.006 defies the plain language and purpose of the Legislature's comprehensive and carefully crafted scheme governing residential tenancies.

The Court conflates section 92.006(c), which does not apply in this case, with section 92.006(e), which does, by reading the application of subsection (e) to be dependent on the application of subsection (c). But these subsections, like the other subsections of 92.006, are independent provisions, each of which addresses different circumstances and procedures for when the parties to a residential lease can agree to waive or expand their respective duties and remedies. Looking to subsection (c) instead of subsection (e) drives the Court to misconceive the issue presented. The issue presented is not whether, under section 92.006(c), JoAnn Brown agreed to waive any duty Churchill Forge has to repair the apartment building, but whether under section 92.006(e), Churchill Forge and JoAnn Brown created a valid agreement for her to "repair or remedy, at [her] expense" the condition at issue. TEX. PROP. CODE § 92.006(e). In other words, the issue is not whether Brown waived Churchill Forge's duty to repair (I agree with the Court that Churchill Forge did not have a duty to repair Jeff Brown's unit if he caused the fire), but whether Churchill Forge has a contractual right to reimbursement from Brown. The fact that subsection (c) does not apply because Churchill Forge did not have a duty to repair under section 92.052(b), does not mean that the lease did not have to meet the section 92.006(e) requirements for Brown to be responsible to repair or remedy the damage. And because the lease does not meet the section 92.006(e) requirements, Churchill Forge may not rely on the lease as a basis to recover reimbursement from JoAnn Brown. Accordingly, I respectfully dissent.

Nothing in the language or structure of section 92.006 supports the Court's view that this lease does not have to meet the

---

16. *See id.* at 386–87.

requirements of section 92.006(e). It is true that subsection (c) appears before subsection (e), but I do not believe we can infer from that fact that subsection (e) applies only if subsection (c) applies first— neither (c) nor (e) contains such conditional language. In section 92.006, the Legislature has specified different circumstances and procedures for when the parties to a residential lease can agree to waive or expand their respective duties and remedies. *See* TEX. PROP.CODE § 92.006. Each of the six sections lists different duties, remedies, or conditions, and then directs how those aspects of the landlord-tenant relationship may be shifted between the parties, by waiver or expansion through certain kinds of agreements. *Id.* Careful review of each subsection demonstrates that the subsections operate independently of each other.

Under section 92.006(a), for example, a landlord's duty concerning security deposits may not be waived. TEX. PROP.CODE § 92.006(a). A landlord's duty to install a smoke detector also may not be waived, but the landlord's duty to inspect and repair a smoke detector "may be waived only by written agreement." *Id.* The items listed under subsection (b), including a landlord's duties and a tenant's remedies concerning security devices, among other things, "may be enlarged only by specific written agreement." *Id.* § 92.006(b).

Subsection (c) states: "A landlord's duties and the tenant's remedies under Subchapter B, which covers conditions materially affecting the physical health or safety of the ordinary tenant, may not be waived except as provided in Subsections (d), (e), and (f) of this section." *Id.* § 92.006(c). As in subsections (a) and (b), the Legislature has identified in subsection (c) a particular aspect of the landlord-tenant relationship; that is, duties and remedies concerning subchapter B condi-

tions, and then specified that to waive those duties or remedies, the waiver must meet the requirements set out in subsections (d), (e), and (f). Any waiver must meet those requirements so that the purpose behind subsections (d), (e), and (f), limiting transfer of responsibility for subchapter B conditions, is not defeated.

Subsection (d) simply states that the parties may agree for "the tenant to repair or remedy, at the landlord's expense, any condition covered by Subchapter (B)." *Id.* § 92.006(d). But if the parties want to agree for "the tenant to repair or remedy, at the tenant's expense, any condition covered by Subchapter B," then the lease must meet the subsection (e) requirements. *Id.* § 92.006(e). Thus, in section 92.006(e) the Legislature has explicitly addressed when landlords and tenants may agree for the tenant to be responsible for subchapter B conditions.

The Court does not cite any place in chapter 92 where the Legislature has imposed a duty on tenants to pay for subchapter B conditions, or any place where the Legislature has provided landlords the remedy of reimbursement from tenants for subchapter B conditions. The lease clause at issue thus expands the duties and remedies of the parties, and therefore is subject to section 92.006, which is entitled, "Waiver or Expansion of Duties and Remedies." To avoid the statute's specific requirements, the Court labels section 92.006(e) "permissive," 61 S.W.3d at 372, but that is incorrect. The Legislature has determined that landlords who own more than one rental dwelling may not shift to their tenants responsibility for subchapter B conditions. *See* TEX. PROP.CODE § 92.006(e)(1). If the parties were completely free to contract, section 92.006(e)'s requirements would be superfluous. Under the statute's plain language, then, the only issue the Court must determine is if

the condition here, a fire damaging the entire complex, is a condition covered by subchapter B. If so, then the lease provision requiring that the tenant pay to repair the condition must comply with section 92.006(e).

The Court reads "any condition covered by Subchapter B" in section 92.006(e) to mean only a condition the landlord has a duty to repair or remedy under section 92.052. 61 S.W.3d at 370. Yet the Court points to no language in the statute imposing this limitation, and such a limitation is inconsistent with the language of section 92.006(e). Conditions and a landlord's duties to repair those conditions are two distinct things—a condition exists even if the landlord does not have a duty to repair it for an individual tenant. And simply because the landlord does not have a duty under section 92.052(b) to repair a condition caused by the tenant, does not mean that the condition is not a condition covered by Subchapter B.

Subchapter B covers conditions that "materially [affect] the physical health or safety of the ordinary tenant." TEX. PROP. CODE § 92.056(b)(2). As we explained in *Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 755 (Tex.1998), the Legislature enacted the statute that is now subchapter B to incorporate the implied warranty of habitability that we recognized in *Kamarath v. Bennett,* 568 S.W.2d 658 (Tex.1978). Subchapter B sets out specific minimum standards of habitability, procedures for enforcing those standards, and remedies for a landlord's failure to meet those standards. *See generally* TEX. PROP. CODE §§ 92.051–.061. Thus, subchapter B is concerned with the habitability of a particular premises, and it contains both a procedural and a substantive component. *See Moreno v. Brittany Square Assocs.,* 899 S.W.2d 261, 263 (Tex.App.—Houston [14th Dist.] 1995, writ denied). In addition, subchapter B includes section 92.054, entitled "Casualty Loss," which explicitly addresses "a condition [resulting] from an insured casualty loss, such as fire," thereby indicating that fires are conditions covered by subchapter B. *See* TEX. PROP.CODE § 92.054. Moreover, when a fire destroys an entire complex, it obviously affects physical health and safety.

It is undisputed that Churchill Forge has not met the requirements of section 92.006(e). The Legislature has determined that landlords who own more than one rental dwelling may not contractually shift to their tenants the expense of repairs for conditions covered by subchapter B. TEX. PROP.CODE § 92.006(e)(1). Churchill Forge owned eighteen units in the apartment building, and so it cannot contractually shift to any tenant the duty to repair a condition covered by subchapter B. Even if Churchill Forge had owned only one dwelling, thereby making section 92.006(e) available to Churchill Forge, the lease in this case did not meet the section 92.006(e)(4) requirement that the agreement for repairs be underlined, printed in boldface, or in a separate addendum, and be specific and clear. *Id.* § 92.006(e)(4).

Section 92.006(f), on the other hand, does permit landlords who own more than one rental dwelling to shift to the tenant the duty to remedy three listed conditions, subject to the same specificity and conspicuity requirements of section 92.006(e)(4). *Id.* § 92.006(f). Those conditions are: (1) damage from wastewater stoppages caused by foreign or improper objects in lines that serve only the tenant's dwelling; (2) damage to doors, windows, or screens; and (3) damage from windows or doors left open. *Id.*

Part of the reimbursement clause in the form lease here was underlined and tracked the language of section 92.006(f). However, the sentence immediately pre-

ceding that specific and conspicuous language, the sentence Churchill Forge relies on to establish JoAnn Brown's liability for the casualty loss, is not underlined and states only that "[y]ou must promptly reimburse us for loss, damage, or cost of repairs or service caused anywhere in the apartment community by your or any guest's or occupant's improper use or negligence." This sentence does not clearly and specifically inform the tenant of potential liability for loss of an entire building—especially when followed by the underlined sentence specifically listing relatively minor conditions (e.g., damage to doors or screens) that the tenant must pay for. Casualty loss is likely to be of a far greater magnitude than the specific conditions made conspicuous by underlining.

The Court repeatedly asserts that freedom to contract would be curtailed by my reading of chapter 92, and that JoAnn Brown and other tenants are free to negotiate the details of the form lease at issue. Both assertions are wrong. First, it is the Legislature that has clearly limited the ability of landlords who own more than one rental dwelling to shift to their tenants responsibility for subchapter B conditions. The parties do remain free to strike any bargain that is "consistent with the purposes of [subchapter B]," Tex. Prop.Code § 92.061, but an agreement to shift to a tenant the risk of casualty loss absent compliance with section 92.006(e) is inconsistent with those purposes. I would think that, at a minimum, such an agreement would also have to meet the section 92.006(e)(4) conspicuity standard for requiring a tenant to pay for a broken window or hole in a screen. Second, there is no evidence that this form lease was the product of negotiation between the parties or that JoAnn Brown knew she was agreeing to in effect be an insurer of casualty loss for the apartment complex.

Finally, Churchill Forge is not without a remedy; it can sue the negligent party for damages. *See* Tex. Prop.Code § 92.061 ("[T]his subchapter does not affect . . . any right a landlord or tenant may have to bring an action for . . . property damage under the law of this state."). Or it can collect its property-insurance proceeds and the insurer can file a subrogation action against the allegedly negligent party. Indeed, that is exactly what happened in this case—Churchill Forge has collected its insurance proceeds and its insurer has a subrogation claim for damages against Jeff Brown for his alleged negligence. By focusing on the fact that Churchill Forge does not have a duty to repair because of Jeff's negligence, the Court loses sight of the fact that JoAnn Brown was not negligent in this case, and that Churchill Forge is suing her not for negligence but for breach of contract. As I have explained above, the Legislature has enacted specific requirements that such a contract must meet.

In chapter 92 the Legislature set out a comprehensive scheme governing residential tenancies, including a balanced and workable system for landlords and tenants to resolve disputes about habitability. In section 92.006 the Legislature created detailed provisions governing when landlords and tenants may agree to waive or expand their respective duties and remedies in that system. By validating the lease in this case, the Court defeats the Legislature's plain language and policy decision in section 92.006(e)(1) that landlords who own more than one dwelling may not shift to their tenants responsibility for conditions affecting habitability. For these reasons, I respectfully dissent.