

# Fourth Court of Appeals
## San Antonio, Texas

**OPINION**

No. 04-12-00721-CV

**PHILADELPHIA INDEMNITY INSURANCE COMPANY** a/s/o Mirsan, L.P., d/b/a Sienna
Ridge Apartments,
Appellant

v.

Carmen A. **WHITE**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-16235
Honorable Peter Sakai, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice
Dissenting opinion by:  Marialyn Barnard, Justice

Sitting:         Sandee Bryan Marion, Justice
                 Marialyn Barnard, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:  December 18, 2013

AFFIRMED

Appellant Philadelphia Indemnity Insurance Company ("Philadelphia"), as subrogee of

Mirsan, L.P. d/b/a Sienna Ridge Apartments, sued appellee Carmen White for damages related to

an apartment fire.  Philadelphia alleged White caused the damage to her apartment and several

adjacent apartments and she was liable for all damages according to a provision in her apartment

lease.  After a jury found in favor of Philadelphia, White moved for a judgment notwithstanding

the verdict ("JNOV"), and the trial court granted the motion.  We affirm.

**BACKGROUND**

After completing graduate school out-of-state, White obtained employment in San Antonio, Texas. Her friend recommended White live in her apartment complex, Sienna Ridge Apartments. White never visited the complex, but handled her rental agreement via telephone and email before moving to San Antonio. Although White did not negotiate the terms of the lease or hire an attorney to review the lease, she ultimately signed documents consisting of a rental application and a standard Texas Apartment Association ("TAA") lease contract. Once she moved into her apartment, White's parents purchased and gifted her a new washer and dryer. White connected the washer herself, but when she plugged the cord she had purchased for the dryer into the outlet, the outlet sparked. White then asked Sienna Ridge for assistance in connecting the dryer, and, about a week after she moved into the apartment, a Sienna Ridge maintenance man installed the dryer. Several days later, while using the dryer, a fire started inside the dryer. White's entire belongings perished in the fire, and her apartment and several adjacent units were destroyed.

White testified she had used the dryer two or three times prior to the day the fire occurred and experienced no problems. On the day of the fire, White placed several items inside the dryer, including two decorative pillows, sheets, a duvet, a blanket, and a bed pillow. After starting the dryer, she sat down to watch television and immediately began to smell a "burning smell" coming from the laundry area. She opened the dryer's door and saw flames inside the drum. She attempted to extinguish the flames with a fire extinguisher, but was unsuccessful because she was not able to get it to work. She left her apartment to call 911.

Sienna Ridge filed a damage claim with its insurance carrier, Philadelphia, which in turn, adjusted and paid the claim. Philadelphia then sued White for damages in excess of $83,000, asserting its subrogation rights against her. Philadelphia's initial claims were based on negligence. Philadelphia amended its pleadings to add breach of contract, alleging White violated paragraph

12 of the TAA lease by failing to timely reimburse Sienna Ridge for the damage caused by the fire.

The case was submitted to the jury on both the negligence and breach of contract claims. The jury found White was not negligent, but found she breached the lease contract, and awarded Philadelphia its claimed damages, plus attorney's fees. Thereafter, Philadelphia filed a motion for entry of judgment, and White filed a motion for JNOV. After a hearing on these motions and additional briefing, the trial court granted White's motion for JNOV and denied Philadelphia's motion for entry of judgment. Ultimately, the court signed the final judgment entering a take-nothing judgment in favor of White. Philadelphia then perfected this appeal.

## STANDARD OF REVIEW

A trial court may grant a JNOV if a directed verdict would have been proper because a legal principle precludes recovery. *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *AMS Const. Co., Inc. v. K.H.K. Scaffolding Houston, Inc.*, 357 S.W.3d 30, 40 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd); TEX. R. CIV. P. 301. In her motion for JNOV and on appeal, White contends paragraph 12 of the TAA lease is unenforceable as a matter of law because it: (1) is ambiguous; (2) lacks consideration; (3) violates the Texas Property Code; (4) is void on public policy grounds; (5) is unconscionable; (6) fails to meet the fair notice requirements of risk-shifting contractual clauses; and (7) improperly creates a new theory of strict liability. Because the trial court did not specify the grounds for granting White's JNOV motion, we must uphold the trial court's ruling if any of the stated grounds in the motion uphold the judgment. *Sbrusch*, 818 S.W.2d at 394. It is Philadelphia's burden to discredit the grounds White raised in her motion. *Id.* Because we believe the grounds of ambiguity and void on public policy grounds are dispositive, we address only those two grounds for the trial court's JNOV.

**AMBIGUITY**

Paragraph 12 of the TAA lease states as follows:

DAMAGES AND REIMBURSEMENT. **You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community due to:** a violation of the Lease Contract or rules; improper use; negligence; other conduct by you or your invitees, guests or occupants; or **any other cause not due to our negligence or fault.** . . . .

[Emphasis added.]

White first argues paragraph 12's catch-all provision—"or any other cause not due to our negligence or fault"—is ambiguous. Whether a contract is ambiguous is a question of law for the court. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). In determining whether the contract is ambiguous, courts look at the contract as a whole, in light of the circumstances present when the parties entered into the contract. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). When a contract is found to be ambiguous, the parties' intent is a determination for the factfinder. *Coker v. Coker*, 650 S.W.2d 391, 394-95 (Tex. 1983); *see Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996) (noting if meaning of contract is uncertain, or is reasonably susceptible to more than one interpretation, then it is ambiguous and its meaning must be resolved by finder of fact). When a written contract is so worded that it can be given a certain definite legal meaning or interpretation, it is not ambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). In construing a contract, we look to ascertain the parties' intent as expressed in the instrument. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).

We conclude the language of paragraph 12 is not ambiguous—"You must promptly pay or reimburse us for loss, damage, consequential damages . . . due to . . . other conduct by you or your

invitees, guests or occupants; or any other cause not due to our negligence or fault." We hold that under the plain language of the paragraph, only one interpretation can be construed: White is required to pay Sienna Ridge for any damages to the apartment complex as long as the apartment complex was not at fault. Accordingly, the trial court could not have granted White's motion for JNOV based on the ground of ambiguity. Because we conclude the challenged portion of paragraph 12 is not ambiguous, we next consider whether the language violates public policy.

## VOID ON PUBLIC POLICY GROUNDS

Philadelphia asserts the trial court erred in granting White's motion for JNOV and overturning the jury's finding that White breached paragraph 12 of her apartment lease. Philadelphia argues paragraph 12's catch-all provision rendered White liable for all the damage caused by the fire that started in her dryer. Philadelphia presented evidence at trial claiming there were only two causes of the fire: White's misuse of the dryer or a dryer defect. Despite the jury finding White was not negligent, Philadelphia argues that because White owned the dryer, she is contractually liable, pursuant to paragraph 12, to pay Sienna Ridge for all damages, including those damages related to areas outside of her apartment and adjacent units. Philadelphia contends her failure to pay Sienna Ridge for the fire damage constituted a breach of the lease contract.

White focuses her public policy argument on the language of paragraph 12 that states a tenant "must promptly pay or reimburse [Sienna Ridge] for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community due to . . . *any . . . cause not due to [Sienna Ridge's] negligence or fault*." [Emphasis added.] White argues this language is against public policy because it makes a tenant liable for damage to the entire apartment complex for accidental losses, acts of God, criminal acts of another, or any other act of someone or something unassociated with the tenant or Sienna Ridge. We agree.

We recognize Texas's strong public policy in favor of preserving the freedom of contract. TEX. CONST. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."); *see also Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 370 (Tex. 2001) (observing that competent parties in Texas have the utmost liberty of contracting). "We also recognize the importance of the 'indispensable partner' to the freedom of contract: contract enforcement." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008). However, freedom of contract is not unbounded. *Id.* "As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 & n. 11 (Tex. 2004). A court can declare a contract void as against public policy and refuse to enforce it. *In re Lee*, No. 11-0732, 2013 WL 5382067, at *14 n. 9 (Tex. Sept. 27, 2013) ("courts may refuse to enforce contracts that are either expressly or impliedly prohibited by statute or by public policy"). Whether a contract violates public policy is a question of law that we review *de novo*. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 726 (Tex. App.—Dallas 2004, no pet.).

The Legislature determines public policy through the statutes it passes. *Fairfield Ins.*, 246 S.W.3d at 665. The Legislature has determined public policy regarding limitations on the freedom of a landlord and tenant to contract in the Texas Property Code, which governs residential tenancies. *Churchill Forge*, 61 S.W.3d at 370.[1] The provisions of Property Code Chapter 92 do "not affect any other right of a landlord or tenant under contract, statutory law, or common law that is consistent with the purposes of this subchapter . . . ." TEX. PROP. CODE ANN. § 92.061 (West 2007). However, the *Churchill Forge* Court agreed with the co-tenant's argument that the

---

[1] In *Churchill Forge*, the question was "whether by statute or the common law, a commercial landlord is prohibited from contractually obligating its tenant to be responsible for damages caused by the tenant, the tenant's occupant, or guest." 61 S.W.3d at 369.

general principle that competent parties in Texas "shall have the utmost liberty of contracting" "has been altered by the Legislature [in] Chapter 92 of the Texas Property Code." *Id.* at 370.

Chapter 92 permits the parties to contract over who will pay for repairs when the tenant causes damage. *Churchill Forge*, 61 S.W.3d at 372. Under section 92.052, "[u]nless the condition was caused by normal wear and tear, the landlord does not have a duty . . . to repair or remedy a condition caused by: (1) the tenant; (2) a lawful occupant in the tenant's dwelling; (3) a member of the tenant's family; or (4) a guest or invitee of the tenant." TEX. PROP. CODE § 92.052(b). Thus, Subchapter B imposes no duty on a landlord to bear the cost of repairing damage allegedly caused by a tenant. *Churchill Forge*, 61 S.W.3d at 372.

The Property Code also "specifically authorizes the parties to shift by contract costs of repairs for certain damages from the landlord to the tenant irrespective of whether the damage was caused by the tenant." *Id.* at 372-73. But, these "certain damages" are limited. Under section 92.006(f), a landlord and tenant "may agree that, except for those conditions caused by the negligence of the landlord, the tenant has the duty to pay for repair of the following conditions that may occur during the lease term or a renewal or extension: (1) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the tenant's dwelling; (2) damage to doors, windows, or screens; and (3) damage from windows or doors left open." TEX. PROP. CODE § 92.006(f). "By adding subsection (f), the Legislature permitted landlords and tenants to bargain over who would bear the cost of repairing these [three] specific conditions, typically tenant-caused, without requiring landlords to show that they were tenant-caused." *Churchill Forge*, 61 S.W.3d at 372.

In *Churchill Forge*, the Court noted that "[l]egislative permission to contract under certain circumstances does not necessarily imply that contracting under other circumstances is

prohibited." *Id.* at 371.[2] "Certainly, given this State's strong commitment to the principle of contractual freedom, we should hesitate to infer a general prohibition from a statutory clause granting specific permission to contract." *Id.* However, there is no need to infer because the Legislature "explicitly identified the prohibition it intended to enforce: 'A landlord's duties and the tenant's remedies under Subchapter B, which covers conditions materially affecting the physical health or safety of the ordinary tenant, may not be waived except as provided in Subsections (d), (e) and (f) of this section.'" *Id.* (quoting TEX. PROP. CODE § 92.006(c)). But, after considering the cost-shifting provisions contained in the Property Code, the Court reached several conclusions. First, considered together, section 92.006(c) and (e)[3] dictate a commercial landlord cannot ask a tenant to pay for repairs the landlord has a duty to make. *Id.* at 373. "Excepted from that dictate is subsection (f), under which there are three specific kinds of repairs that the parties can, by contract, shift the duty to pay for from the landlord to the tenant." *Id.* "And not covered by that dictate are those agreements between the parties concerning damages for which the landlord has no duty to repair, i.e., tenant-caused damages." *Id.*

We believe the public policy of Texas, as expressed in the Property Code, is that tenants may be held responsible for damages they, their cotenants, or their guests cause, and a landlord and tenant have the freedom to contractually agree a tenant will pay for specific kinds of repair without a showing that the tenant caused the damage. *See Churchill Forge*, 61 S.W.3d at 370-73.

---

[2] This statement by the Court was made in the context of the Court considering the co-tenant's argument that Churchill Forge could not enforce its lease provision and hold her liable for fire damage to the apartments caused by her co-tenant because it did not meet the conditions of subsection (e). In that case, the lease held the tenant liable only for damages caused by the tenant's or any guest's or occupant's improper use or negligence, and for certain specified damages (1) to doors, windows, or screens; (2) from windows or doors left open; and (3) from wastewater stoppages caused by improper objects in lines exclusively serving the tenant's apartment.

[3] Subsection (e), which allows a landlord and tenant to "agree for the tenant to repair or remedy, at the tenant's expense any condition covered by Subchapter B," does not apply here. Subsection (e) applies if "at the beginning of the lease term the landlord owns only one rental dwelling . . . ." TEX. PROP. CODE § 92.006(e)(1). Sienna Ridge is an apartment complex.

Absent from this legislatively-expressed public policy is the imposition of contractual liability on a tenant for any and all damages to the apartment complex whenever the damages are not caused by the landlord. In this case, all that is required to impose liability on a tenant is that the damage not be caused by Sienna Ridge.

Here, the jury determined White's negligence did not proximately cause damages to Sienna Ridge. However, under paragraph 12, White is required to pay Sienna Ridge for any damages to the apartment complex as long as the apartment complex was not at fault. We conclude paragraph 12's broad imposition of liability on a tenant for damage not caused by Sienna Ridge is void because it violates public policy as expressed in the Property Code.[4]

## CONCLUSION

Because the trial court's JNOV can be upheld on the ground that paragraph 12 violates public policy, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

---

[4] An important distinction between the lease provision in *Churchill Forge* and the lease provision we consider in this appeal is that the *Churchill Forge* lease did not contain the broad language holding a tenant liable for damages "due to . . . any other cause not due to [the landlord's] negligence or fault."