# IN THE SUPREME COURT OF TEXAS

═══════════

No. 14-0086

═══════════

PHILADELPHIA INDEMNITY INSURANCE COMPANY, A/S/O MIRSAN, L.P., D/B/A
SIENNA RIDGE APARTMENTS, PETITIONERS,

v.

CARMEN A. WHITE, RESPONDENT

═════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

═════════════════════════════════════════════════

JUSTICE DEVINE, dissenting.

The Court's opinion obscures the simple issue in this case: whether a plaintiff can prevail on

a breach–of–contract claim without a jury finding that the defendant breached an enforceable

promise. The obvious answer is no. Because the Court holds otherwise, I respectfully dissent.

I

After a fire destroyed Carmen White's apartment and damaged several neighboring units,

White's landlord filed a claim with its insurer, Philadelphia Indemnity Insurance Company.

Philadelphia paid the claim, and then sued White, asserting its subrogation rights against her.

Philadelphia initially claimed White was negligent in starting the fire, but later added a

breach–of–contract claim against White. Philadelphia asserted that, even if White didn't cause the

fire, she breached the "catch-all" provision in paragraph 12 of her lease by failing to reimburse her

landlord for the repairs associated with the fire.

The catch-all provision in paragraph 12 of White's lease provides that she is responsible for paying for the cost of repairing any conditions "in the apartment community" that were "not due to [the landlord's] negligence or fault." On its face, the catch-all provision violates chapter 92 of the Property Code, which dictates that a commercial landlord (like White's) "cannot ask a tenant to pay for repairs that the landlord has the duty to make." *Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 373 (Tex. 2001). The catch-all provision asks White to pay for repairs of conditions affecting habitability that she did not cause—repairs White's landlord had a duty to make. TEX. PROP. CODE § 92.052(a), (b).

A separate provision in paragraph 12 of White's lease obligates her to pay for repairs of conditions she caused. Philadelphia does not assert that White breached this provision. Philadelphia instead asserts that White breached the catch-all provision because, as it recognized in the court of appeals, it can hold White responsible without obtaining "a definitive finding of what caused the [fire]."

Indeed, at trial, no witness, including Philadelphia's own expert, offered an opinion on the cause of the fire, and no cause was conclusively established.[1] The jury was asked in broad-form

---

[1] On appeal, Philadelphia asserts that a malfunction in White's dryer caused the fire—a cause its own expert purported to rule out at trial. While White did first notice the fire in her dryer, there is evidence that neither White nor her dryer actually caused the fire. Specifically, there is evidence that White's landlord installed her dryer; that Philadelphia's expert believed her dryer was functioning properly when the fire started; that the only material in a sample taken from her dryer after the fire was cotton; that cotton ignites at a temperature at least one hundred degrees higher than the temperature at which a properly-functioning dryer operates; that no ignitable liquids were present on the cotton in her dryer; that the apartment's electrical outlet sparked on the first attempt to connect the dryer and tripped the apartment's breaker; that the fire department did not inspect the apartment's electrical system; and that Philadelphia's expert testified prior to trial that he did not rule out the apartment's electrical system as the cause of the fire.

whether White was negligent and whether White breached her lease. The jury answered "no" to the first question, but "yes" to the second question. Although the jury found that White breached her lease, it did not necessarily conclude that she caused the fire, because the catch-all provision in paragraph 12 of her lease makes her responsible for any condition "not due to the [landlord's] negligence or fault." Based on the evidence before it, the jury could have concluded that White did not cause the fire, but also concluded she breached the catch-all provision. Had Philadelphia sued on the other provision in paragraph 12 of White's lease obligating her to pay for repairs of conditions she caused (or a catch-all provision that did not overstep the bounds of chapter 92 by purportedly making her responsible for conditions affecting habitability that she did not cause), the jury's "yes" answer on whether White breached her lease would have necessarily answered the question of whether she caused the fire. However, Philadelphia was able to avoid obtaining that finding by relying on the unlawful overbreadth of the catch-all provision.

Recognizing the absurdity of this result, White moved for judgment notwithstanding the verdict, arguing (among other things) that Philadelphia could not prevail on its breach–of–contract claim because (1) the catch-all provision in paragraph 12 of her lease (but not her whole lease) was void for overstepping the bounds of chapter 92 by making her responsible for conditions affecting habitability that she did not cause, and (2) Philadelphia had not obtained a jury finding establishing that she caused the fire. The trial court granted White's motion without specifying the grounds, and the court of appeals affirmed on the grounds that the catch-all provision (but not her whole lease) was void. 421 S.W.3d 252, 256, 258 (Tex. App.—San Antonio 2013).

II

The Court concludes that the court of appeals' judgment must be reversed because the catch-all provision is enforceable as written. I disagree. Chapter 92 dictates that landlords may not obtain promises from tenants to pay for repairs of conditions affecting habitability that the tenant does not cause. Whether written broadly (*i.e.*, tenant pays for conditions "not due to [the landlord's] negligence or fault") or narrowly (*i.e.*, tenant pays for conditions affecting habitability the tenant does not cause), a promise is void to the extent it violates this dictate. Accordingly, the only way a broadly worded promise like that found in the catch-all provision can be enforced is if it is severed or divided, which has not occurred here.

A promise is void if either its formation *or* performance is prohibited by statute.[2] In the first instance, a statute may prohibit, either expressly or impliedly, the making of a certain kind of promise, even though its performance may otherwise be lawful.[3] A law that prohibits contracting on Sundays is an example of this type of statute.[4] A promise made in contravention of this type of

---

[2] *See Tubb v. Kramer Bros. Nurseries*, 237 S.W.2d 680, 681 (Tex. Civ. App.—Waco 1951, writ ref'd n.r.e.) (recognizing contracts may be illegal because they are "made in violation of the express provisions of a statute" or because they "cannot be performed without such violation").

[3] *See id.*; *see also* 5 RICHARD A. LORD, WILLISTON ON CONTRACTS § 12:1, at 727-40, 744-53 (4th ed. 2009) (hereinafter WILLISTON) (recognizing that a promise to do an act that would violate a statute is unenforceable, but also recognizing that many acts which themselves do not violate a statute may still not be made the subject of a contract); JOHN EDWARD MURRAY, JR., MURRAY ON CONTRACTS § 343, at 726-27 (2nd rev. ed. 1974) (hereinafter MURRAY) (distinguishing between statutes "which expressly, or by implication, prohibit the making of a contract" and those "which prohibit the doing of specified things, which may become the subject-matter of a contract").

[4] *See* 15 GRACE MCLANE GIESEL, CORBIN ON CONTRACTS § 82.1, at 237-43 (Joseph M. Perillo ed., rev. ed. 2003); MURRAY § 343, at 726.

statute is void from the very outset because it entails a direct abuse of the freedom to contract.[5]

Secondly, a statute may prohibit the doing of a certain thing, like speeding.[6] Whether a promise is void because its performance violates this type of statute depends on whether the unlawful act was required by the promise—that is, whether the freedom to contract was harnessed towards an unlawful end.[7] For example, a promise to transport goods at an unlawful speed—whether appearing on the face of a contract or through extrinsic facts—is void.[8] However, a promise to transport goods will not be declared void simply because the carrier speeds while performing the promise.[9] In *Lewis*, we summarized this distinction as follows:

> A contract to do a thing which cannot be performed without a violation of the law is void. But where the illegality does not appear on the face of the contract it will not be held void unless the facts showing its illegality are before the court. . . . A contract that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner.[10]

---

[5] *See, e.g., Woolsey v. Panhandle Refining Co.*, 116 S.W.2d 675, 676, 678 (Tex. 1938) (concluding that "great weight of authority" supported holding lifetime employment agreement "void" for waiving workers' compensation benefits); *Am. Nat. Ins. Co. v. Tabor*, 230 S.W. 397, 399 (Tex. 1921) (concluding that provision in insurance policy which was "repugnant to the mandatory statute" and "destroy[ed] a benefit to the insured which the statute was designed to guarantee" was "void"); *see also* MURRAY § 343, at 726 ("[I]t is clear that a bargain entered into in violation of th[is type of] statute is illegal, and this is so whether or not the statute expressly declares it to be illegal.").

[6] *See Tubb*, 237 S.W.2d at 681; *see also* MURRAY § 343, at 726; 5 WILLISTON § 12:1, at 726-40, 744-53.

[7] *Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947).

[8] *See id.*

[9] *See id.*

[10] *Id.* (citations omitted) (quoting another source) (internal quotation marks omitted).

Drawing on *Lewis*, the Court concludes that the catch-all provision must be enforced as written, because it could be "performed without violating the Property Code." *Ante* at ___. The Court, however, ignores the fact that the very making of White's lease violated chapter 92 of the Property Code.[11] The inclusion of the catch-all provision in paragraph 12 of White's lease was problematic in and of itself, independent of how the catch-all provision might be performed. As we made clear in *Churchill Forge,* the Property Code restricts parties' freedom to contract over certain matters—namely, repairs to conditions affecting habitability that the tenant does not cause.[12] Accordingly, the catch-all provision is void to the extent it purports to contract over this matter.[13]

The only way the catch-all provision can be enforced then is if the singular promise made by the catch-all provision (*i.e.*, the promise to pay for repairs to any condition "not due to [the landlord's] negligence or fault") is severed or divided into two separate promises—one legitimate promise to pay for repairs the landlord does not have a duty to make, and one illegitimate promise to pay for repairs the landlord has a duty to make.[14] Having severed or divided the provision so, we

---

[11] *See* TEX. PROP. CODE §§ 92.006(c) (providing that landlord's duty to repair conditions affecting habitability not caused by the tenant "may not be waived," except in circumstances not present here), 92.0563(b) (authorizing an award of actual damages, statutory penalties, and attorney's fees for knowingly "contracting orally or in writing with a tenant to waive the landlord's duty to repair").

[12] *Churchill Forge*, 61 S.W.3d at 373; *see also* TEX. PROP. CODE §§ 92.006(c), 92.0563(b).

[13] *See, e.g., Woolsey*, 116 S.W.2d at 678; *Am. Nat. Ins.*, 230 S.W. at 399.

[14] *See Broadley v. Mashpee Neck Marina, Inc.*, 471 F.3d 272, 275 (1st Cir. 2006) ("The doctrine pertinent where a contract provision is unlawfully overbroad is that which *permits* a court to sever or divide provisions that are unlawful[ly over broad] as written, retaining those provisions or applications of them that are permissible."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 184 (1981).

could enforce the unoffending promise. Philadelphia never requested the trial court or court of appeals do this, however.

But even if Philadelphia had requested severance or division, it would not have saved Philadelphia from its failure to obtain jury findings on the cause of the fire. As part of its breach–of–contract claim, Philadelphia would have borne the burden of proving and obtaining a finding that White breached her unoffending promise (*i.e.*, to pay for repairs of conditions she caused) by causing the fire. Because Philadelphia never proved or obtained that finding, it necessarily failed to make out its breach–of–contract claim.

By treating the catch-all provision as enforceable as written, the Court confers a *benefit* on parties whose contracts do not conform to chapter 92 of the Property Code: it allows them to avoid obtaining jury findings on causation, which they otherwise must obtain. Neither chapter 92 nor our precedent can be construed to reach this result.[15]

III

The plaintiff always bears, in the first instance, the burden of proving its cause of action. Here, Philadelphia sought to meet its burden by proffering a lease that was unlawfully overbroad on its face. Philadelphia asserted that, in spite of its overbreadth, the lease could be applied lawfully in this case because White caused the fire. Yet Philadelphia never proved that. Accordingly,

---

[15] The Property Code's authorization of an award of actual damages, statutory penalties, and attorney's fees against a landlord who knowingly violates chapter 92 by "contracting orally or in writing with a tenant to waive the landlord's duty to repair" strongly suggests that the Legislature did *not* intend the Court to provide a benefit to a landlord who unknowingly violates chapter 92. TEX. PROP. CODE § 92.0563(b). Because Justice Boyd's approach also avoids conferring a benefit on parties whose contracts do not conform to chapter 92, I join his dissent.

Philadelphia never proved that White breached her promise to pay for conditions affecting habitability she caused—the only enforceable promise White could make.  Because the Court nonetheless concludes that Philadelphia can potentially recover on its breach of contract claim, I respectfully dissent.

_____
John P. Devine
Justice

Opinion Delivered: May 13, 2016