JUSTICE BOYD,
joined by JUSTICE WILLETT, JUSTICE LEHRMANN, and JUSTICE DEVINE, dissenting.
The outcome of this case simply depends on which party bore the burden to prove whether a tenant caused a fire in her apartment. The lease requires the tenant to repair all damage not caused by the landlord’s “negligence or fault.” The tenant contends the landlord cannot enforce that requirement because the Texas Property Code requires the landlord to repair the damage unless the tenant caused the fire and prohibits the landlord from contractually avoiding or waiving that duty. The Court agrees that the Property Code[1] *492 would prohibit the landlord from enforcing the. lease provision if the tenant had obtained a jury finding that she did not cause the fire. Ante at 476. I do not agree that the Code puts the burden on the tenant to prove that she did not cause the fire, and conclude instead that the landlord has the burden to prove that she did. Because the landlord did not get a jury finding that the tenant caused the fire, I agree with the court of appeals that the Code prohibits the landlord from enforcing the provision that requires the tenant to repair the damage. Because the Court holds otherwise, I respectfully dissent.
I.
The Lease
A fire that apparently started in a clothes dryer caused- $83,000 in damages to Carmen White’s apartment and others around hers. When White tried to plug in a new dryer that her parents had given her, the cord sparked and the breaker tripped. She contacted the landlord, whose employee later installed the dryer and plugged it in. White was using the dryer when the fire started, but no one seems to know what actually caused the fire to ignite.
White signed a lease in which she agreed to pay for any damages that result from “any cause not due to [the landlord’s] negligence or fault.” The jury was not asked whether the fire was “due to [the landlord’s] negligence or fault.” Since the jury did not find the landlord negligent or at fault, I agree with the Court that the lease’s plain language requires White to reimburse the landlord for the damage.
But White contends that the lease is unenforceable. Undoubtedly, the agreement is enforceable under the common law. We “may neither rewrite the parties’ contract nor add to its language,” Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 162 (Tex.2003), and we will construe its unambiguous language “as a matter of law and enforce it as written,” In re Deepwater Horizon, 470 S.W.3d 452, 464 (Tex.2015). White signed a lease agreeing to pay for all damages not caused by the landlord’s negligence or fault, and the common law would hold her to that promise.
II.
The Code
The Legislature, however, has passed statutes that limit the circumstances in which a landlord can require a residential tenant to repair certain conditions. Specifically, the Property Code requires a landlord to repair any condition that “materially affects the physical health or safety of an ordinary tenant.” Tex. PROP. Code *493 § 92.052(a). And the Code expressly provides that this duty “may not be waived.” Id. § 92.006(c). Here, because the fire indisputably created a condition that affects physical health and safety, the Code requires the landlord to repair the damage despite the lease’s language that would otherwise waive that duty.
Yet the Code provides an important exception: the landlord’s unwaivable duty to repair conditions affecting health and safety does not apply to conditions “caused by” the tenant. Id. § 92.052(b).[2] Because this exception simply says “caused by” the tenant, as opposed to “intentionally” or “negligently” (or otherwise) caused by the tenant, the Court concludes, and I agree, that the exception “is not fault based.” Ante at 484. So under the Code, the landlord has an unwaivable duty to repair any condition that affects a tenant’s physical health and safety unless the tenant caused that condition, even if the tenant accidentally or innocently caused it. Ante at 474.
The jury charge only asked whether White negligently caused the fire, and the jury found that she did not. But that does not mean she did not cause the fire without negligence, and there was no jury finding on that issue.[3] The question of whether the exception for tenant-caused conditions applies to the landlord’s otherwise unwaivable duty to repair thus depends on who had the burden to prove that White caused the fire. If White bore the burden to prove that she did not cause the fire, the Court correctly holds that the landlord has no duty here because White failed to get the necessary jury finding. But if the landlord had the burden to prove that White caused the fire, its failure to secure that jury finding renders the exception inapplicable and leaves the landlord with the unwaivable duty to repair despite the lease’s provision to the contrary. I disagree with the Court’s conclusion that the Code places the burden on White to prove that she did not cause the fire.
III.
The Burden
Attempting to avoid her contractual obligation, White contends that the agreement violates the Property Code and thus is invalid and unenforceable. The Court asserts that “White carries the burden of pleading and proving the contract’s invalidity as an affirmative defense.” Ante at 485. I agree, but the issue here. is not whether the contract violated the. landlord’s unwaivable duty, but whether the tenant-caused exception to that unwaivable duty applies.
The last time we addressed this statute, we agreed that the Code places the burden *494 on the landlord to prove that the tenant-caused exception to the unwaivable duty applies. See Churchill Forge, Inc. v. Brown, 61 S.W.3d 368, 372 (Tex.2001) (“Without showing that the damage was caused by the tenant, the landlord would otherwise have a duty to bear the cost of repair....”). The Court dismisses today what was clear-cut to it then, saying, “Language we employed in Churchill Forge assumes the opposite but burden of proof was not at issue in that case.” Ante at 487 n. 10. I see no reason, however, why our reading of the statute should be different today. Dicta is not wrong just because it is dicta. As a simple matter of statutory construction, I believe the Court got it right in Churchill Forge and gets it wrong today.
A. Burden on the party who relies on the finding
The Court contends that its construction “properly places the burden of proof on the party claiming the existence of a duty.” Ante at 486. More specifically, the Court concludes that the tenant must bear the burden of proving the contract’s “invalidity” because that proof establishes an affirmative defense to the landlord’s contract claim. Ante at 474. I agree that the tenant bears the burden of proving the contract’s invalidity as an affirmative defense, but the tenant meets that burden under the statute by proving that the landlord has an unwaivable duty to repair. Tex. PROP. Code §§ 92.052(a), .006(c). Specifically, to avoid her contractual agreement to the contrary, White had to prove that (1) she properly gave the landlord notice of the condition, (2) she was not delinquent in rent payments when she gave the notice, and (3) the condition materially affects the physical health or safety of an ordinary tenant. Id. § 92.052(a).
If the tenant proves those facts, the landlord must repair the condition unless the tenant caused the condition. Id. § 92.052(a), (b). Section 92.052(a) describes all the facts that establish the landlord’s duty, and section 92.052(b) applies only if an additional fact exists: the tenant (or her family, guest, or another lawful occupant) caused the condition. Id. § 92.052(b). Because the exception applies only when evidence proves “additional facts” beyond those that trigger the unwaivable duty, the exception is an affirmative defense to the landlord’s unwaiva-ble duty. See Zorrilla v. Aypco Constr. II, LLC, 469 S.W.3d 143, 157 (Tex.2015) (explaining that an affirmative defense or avoidance is a defense that “require[s] proof of ... additional fact[s] to establish its applicability”).
In this case, the tenant relies on the statutory unwaivable duty and the landlord relies on the tenant-caused exception to avoid the unwaivable duty. The fact that the tenant caused the condition is not an affirmative defense to the landlord’s contract claim; because it is an “additional fact” that defeats the affirmative defense, it is an exception that provides a counter-defense to the tenant’s affirmative defense. “[T]he burden of proving a statutory exception rests on the party seeking the benefit from the exception,” not on the party seeking to avoid that benefit. Better Bus. Bureau of Metro. Dall., Inc. v. BH DFW, Inc., 402 S.W.3d 299, 309 (Tex.App.Dallas 2013, pet. denied) (quoting City of Houston v. Jones, 679 S.W.2d 557, 559 (Tex.App.-Houston [14th Dist.] 1984, no writ)).[4] Here, because the landlord seeks *495 the exception’s benefit, it bore the burden to prove the “additional facts” necessary to trigger the exception.
We have repeatedly and consistently understood that the burden shifts to the plaintiff to establish an exception that provides a counter-defense to the defendant’s affirmative defense. See, e.g., Dynegy, Inc. v. Yates, 422 S.W.3d 638, 642-43 (Tex. 2013) (stating that burden shifted to plaintiff to establish an exception once defendant conclusively established statute of frauds affirmative defense); Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd’s London, 327 S.W.3d 118, 124 (Tex.2010) (“If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage.”). Nothing in the Property Code suggests an alternative burden-shifting scheme than that found in any other context. Properly construed, the Code places the burden on the tenant to establish the landlord’s unwaivable duty and then places the burden on the landlord to establish the tenant-caused exception to that duty.
B. Proof problems
The Court also asserts that placing the burden on the landlord to prove that the tenant caused the damage would result in “potentially insurmountable proof problems,” because the tenant “controls the leased premises and is, therefore, in the best position to ... prove that another party is responsible for the damage.” Ante at 486. I disagree. Here, for example, the evidence established that White acquired and used the dryer. But the landlord’s employee is the one who actually installed it, and he did so after it sparked when White first tried to plug it in. Because White relied on the landlord to properly install the dryer, I conclude that the difficulty the landlord faces in proving that White caused the fire damage pales in comparison to the difficulty White would face proving that she did not cause the damage. We have consistently recognized that, “as a practical matter, ‘proving a negative is always difficult and frequently impossible.’ ” 20801, Inc. v. Parker, 249 S.W.3d 392, 397 (Tex.2008) (quoting State Farm Mut. Auto. Ins. Co. v. Matlock, 462 S.W.2d 277, 278 (Tex.1970)). Absent statutory language compelling the contrary, this Court does not require parties to disprove facts to prove their case. Cf. Eckman, 784 S.W.2d at 675 (concluding that requiring a DTPA claimant to plead and prove both that he is a consumer and that he does not fall into an exception for business consumer “is unduly prejudicial”). Nothing in section 92.052 obligates the tenant to prove a negative, so we should not require White to do so either.
C. Section 92.053(a)
Finally, turning to the statutory text, the Court asserts that Property Code section 92.053(a) “resolves the issue and plainly” requires its construction of section 92.052. Ante at 486. Section 92.053(a), however, places the burden on the tenant “in a judicial action to enforce a right resulting from the landlord’s failure to repair or remedy a condition under Section 92.052.” Tex. PROP. Code § 92.053(a) (emphasis added). The Court’s reliance on section 92.053 confuses the tenant’s *496 “rightfs] resulting from” the landlord’s breach of its unwaivable duty with the existence of that duty in the first place.
Subsequent sections describe the tenant’s rights when a landlofd breaches its duty to repair a condition. Specifically, the tenant may terminate the lease; have someone repair the condition and deduct the repair cost from future rent payments; or get a court order requiring the landlord to repair the condition, reducing the amount of the tenant’s rent, and awarding the tenant a civil penalty, damages, court costs, and attorney’s fees. Id. §§ 92.056(e), .0561, .0563(a). White is seeking none of these rights. In fact, she is seeking no affirmative relief at all. She is only attempting to avoid a contract that the landlord seeks to enforce against her. Her reliance on section 92.052 is a defense to the contract, not a source of any remedy.
Further, even if she were trying to enforce these statutory remedies, the Property Code sets out explicit requirements for obtaining those remedies, and section 92.053(a) places the burden of proof for these requirements on the tenant. That is, to enforce the statutory remedies, the tenant must first give the landlord “notice to repair or remedy the condition”; the condition must “materially affect[ ] the physical health or safety of the ordinary tenant”; the tenant must give the landlord a reasonable time to make the repairs; the tenant must give the landlord a second notice if the landlord fails to make the repairs in a reasonable time (unless the tenant delivered the first notice in writing by a mail service that tracks the notice); the landlord must fail to make a diligent effort to make the repair; and the tenant must not be delinquent on rent payments when the notice was given. Id. § 92.056(b). By placing on the tenant the “burden of proof in a judicial action to enforce a right resulting from the landlord’s failure to repair or remedy a condition under Section 92.052,” section 92.053(a) requires the tenant to prove these conditions to obtain a judicial remedy. Id. (emphasis added). But the judicial remedies presuppose the landlord’s duty, and section 92.053 does not address the burden of establishing that duty in the first place.[5] I therefore do not agree that section 92.053 places the burden on the tenant to prove that an exception to the landlord’s unwaivable duty does not apply.
IV.
Conclusion
Carmen White seeks to escape her agreement to pay for any damages her *497 landlord did not cause. She relies on a statute that requires the landlord to repair any condition that affects physical health and safety and prohibits the landlord from waiving that duty. I agree with the Court that White had the burden .to prove that statutory defense. But the landlord (or more accurately here, its insurer) relies on a statutory exception that eliminates the landlord’s duty when the tenant caused the damage. I would hold that the burden shifts to the landlord to prove that exception to White’s statutory defense. The Court merges these two steps into one and requires White to both prove the duty and disprove the exception. For the reasons explained, I cannot agree. The landlord’s ■insurer did not meet its burden to obtain a finding that White caused the fire that created the condition that the landlord otherwise had an unwaivable duty to repair. I would, therefore, affirm the court of appeals’ determination that the statute places the duty to repair on the landlord rather than on Wdiite, despite their contractual agreement to the contrary. Because the Court holds otherwise, I respectfully disr sent.
JUSTICE DEVINE,
dissenting.
The Court’s opinion obscures the simple issue in this case: whether a plaintiff can prevail on a breach-of-contract claim without a jury finding that the defendant breached an enforceable promise. The obvious answer is no. Because the Court holds otherwise, I respectfully dissent.
I
After a fire destroyed Carmen White’s apartment and damaged several neighboring units, White’s landlord filed a claim with its insurer, Philadelphia Indemnity Insurance Company. Philadelphia paid the claim, and then sued White, asserting its subrogation rights against her. Philadelphia initially claimed White was negligent in starting the fire, but later added a breach-of-eontract claim against White. Philadelphia asserted that, even if White didn’t cause the fire, she breached the “catch-all” provision in paragraph 12 of her lease by failing to reimburse her landlord for the repairs associated with the fire.
The catch-all provision in paragraph 12 of White’s lease provides1 that she is responsible for paying for the cost of repairing any conditions “in the apartment community” that were “not due to [the landlord’s] negligence or fault.” On its face, the catch-all provision violates chapter 92 of the Property Code, which dictates that a commercial landlord (like White’s) “cannot ask a tenant to pay for repairs that the landlord has the duty to make.” Churchill Forge, Inc. v. Brown, 61 S.W.3d 368, 373 (Tex.2001). The catch-all provision asks White to pay for repairs of conditions affecting habitability that she did not cause — repairs White’s landlord had a duty to make. Tex. PROP. Code § 92.052(a), (b).
A separate provision in paragraph 12 of White’s lease obligates her to pay for repairs of conditions she caused. Philadelphia does not assert that White breached this provision. Philadelphia instead asserts that White breached the catch-all provision because, as it recognized in the court of appeals, it can hold White responsible without obtaining “a definitive finding of what caused the [fire].”
Indeed, at trial, no witness, including Philadelphia’s own expert, offered an opinion on the cause of the fire, and no cause was conclusively established.[1] The jury *498 was asked in broad-form whether White was negligent and whether White breached her lease. The jury answered “no” to the first question, but “yes” to the second question. Although the jury found that White breached her lease, it did not necessarily conclude that she caused the fire, because the catch-all provision in paragraph 12 of her lease makes her responsible for any condition “not due to the [landlord’s] negligence or fault.” Based on the evidence before it, the jury could have concluded that White did not cause the fire, but also concluded she breached the catch-all provision. Had Philadelphia sued on the other provision in paragraph 12 of White’s lease obligating her to pay for repairs of conditions she caused (or a catch-all provision that did not overstep the bounds of chapter 92 by purportedly making her responsible for conditions affecting habitability that she did not cause), the jury’s “yes” answer on whether White breached her lease would have necessarily answered the question of whether she caused the fire. However, Philadelphia was able to avoid obtaining that finding by relying on the unlawful overbreadth of the catch-all provision.
Recognizing the absurdity of this result, White moved for judgment notwithstanding the verdict, arguing (among other things) that Philadelphia could not prevail on its breach-of-contract claim because (1) the catch-all provision in paragraph 12 of her lease (but not her whole lease) was void for overstepping the bounds of chapter 92 by making her responsible for conditions affecting habitability that she did not cause, and (2) Philadelphia had not obtained a jury finding establishing that she caused the fire. The trial court granted White’s motion without specifying the grounds, and the court of appeals affirmed on the grounds that the catch-all provision (but not her whole lease) was void. 421 S.W.3d 252, 256, 258 (Tex.App.-San Antonio 2013).
II
The Court concludes that the court of appeals’ judgment must be reversed because the catchall provision is enforceable as written. I disagree. Chapter 92 dictates that landlords may not obtain promises from tenants to pay for repairs of conditions affecting habitability that the tenant does not cause. Whether written broadly tenant pays for conditions “not due to [the landlord’s] negligence or fault”) or narrowly (ie., tenant pays for conditions affecting habitability the tenant does not cause), a promise is void to the extent it violates this dictate. Accordingly, the only way a broadly worded promise like that found in the catch-all provision can be enforced is if it is severed or divided, which has not occurred here.
A promise is void if either its formation or performance is prohibited by statute.[2] *499 In the first instance, a statute may prohibit, either expressly or impliedly, the making of a certain kind of promise, even though its performance may otherwise be lawful.[3] A law that prohibits contracting on Sundays is an example of this type of statute.[4] A promise made in contravention of this type of statute is void from the very outset because it entails a direct abuse of the freedom to contract.[5]
Secondly, a statute may prohibit the doing of a certain thing, like speeding.[6] Whether a promise is void because its performance violates this type of statute depends on whether the unlawful act was required by the promise — that is, whether the freedom to contract was harnessed towards an unlawful end.[7] For example, a promise to transport goods at an unlawful speed — whether appearing on the face of a contract or through extrinsic facts — is void.[8] However, a promise to transport goods will not be declared void simply because the carrier speeds while performing the promise.[9] In Lems, we summarized this distinction as follows:
A contract to do a thing which cannot be performed without a violation of the law is void. But where the illegality does not appear on the face of the contract it will not be held void unless the facts showing its illegality are before the court.... A contract that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner.[10]
Drawing on Lewis, the Court concludes that the catch-all provision must be enforced as written, because it could be “performed without violating the Property Code.” Ante at 483. The Court, however, ignores the fact that the very making of White’s lease violated chapter 92 of the Property Code.[11] The inclusion of the *500 catch-all provision in paragraph 12 of White’s lease was problematic in and of itself, independent of how the catch-all provision might be performed. As we made clear in Churchill Forge, the Property Code restricts parties’ freedom to contract over certain matters — namely, repairs to conditions affecting habitability that the tenant does not cause.[12] Accordingly, the catch-all provision is void to the extent it purports to contract over this matter.[13]
The only way the catch-all provision can be enforced then is if the singular promise made by the catch-all provision (i.e., the promise to pay for repairs to any condition “not due to [the landlord’s] negligence or fault”) is severed or divided into two separate promises — one legitimate promise to pay for repairs the landlord does not have a duty to make, and one illegitimate promise to pay for repairs the landlord has a duty to make.[14] Having severed or divided the provision so, we could enforce the unoffending promise. Philadelphia never requested the trial court or court of appeals do this, however.
But even if Philadelphia had requested severance or division, it would not have saved Philadelphia from its failure to obtain jury findings on the cause of the fire. As part of its breach-of-contract claim, Philadelphia would have borne the burden of proving and obtaining a finding that White breached her unoffending promise (ie., to pay for repairs of conditions she caused) by causing the fire. Because Philadelphia never proved or obtained that finding, it necessarily failed to make out its breach-of-contract claim.
By treating the catch-all provision as enforceable as written, the Court confers a benefit on parties whose contracts do not conform to chapter 92 of the Property Code: it allows them to avoid obtaining jury findings on causation, which they otherwise must obtain. Neither chapter 92 nor our precedent can be construed to reach this result.[15]
Ill
The plaintiff always bears, in the first instance, the burden of proving its cause of action. Here, Philadelphia sought to meet its burden by proffering a lease that was unlawfully overbroad on its face. Philadelphia asserted that, in spite of its over-breadth, the lease could be applied lawfully in this case because White caused the fire. Yet Philadelphia never proved that. Accordingly, Philadelphia never proved that *501 White breached her promise to pay for conditions affecting habitability she caused — the only enforceable promise White could make. Because the Court nonetheless concludes that Philadelphia can potentially recover on its breach of contract claim, I respectfully dissent.

. The Court actually holds that "public policy embodied in the Property Code” would preclude the landlord from enforcing the contract. Ante at 476. Although the difference may be subtle and does not affect the outcome in this case, I do not agree that "public policy” should govern our analysis. Because the Property Code expressly addresses the lease provisions at issue, the issue is whether the statute-as opposed to “public policy"-renders the lease agreement unenforceable.
We have often explained that "parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy.” In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 129 (Tex.2004) (emphasis added). And we have found certain types of contracts to be void as against public policy on several occasions. See, e.g., Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty., 449 S.W.3d 98, 116 (Tex.2014) (no-damages-for-delay provision); Elbaor v. Smith, 845 S.W.2d 240, 249-50 (Tex.1992) (Mary Carter agreements); Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 663 (Tex.1990) (unreasonable covenant not to compete); Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708-09 (Tex.1987) (contract not expressly requiring indemnification for one’s own negligence); Unigard Sec. Ins. Co. v. Schaefer, 572 S.W.2d 303, 307 (Tex.1978) (insurance contract excluding personal injury coverage); Crowell v. Hous. Auth. of Dall., 495 S.W.2d 887, 889 (Tex.1973) (lease provision exempting landlord from tort liability to tenants); Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1118 (1921) (contract to sell custody of child). But in all of these cases, no statute specifically prohibited the contractual agreement, so we found the contract unenforceable for public policy reasons.
Certainly, "it is by now axiomatic that legislative enactments generally establish public policy.” Royston, Rayzor, Vickery, & Williams, LLP v. Lopez, 467 S.W.3d 494, 504 (Tex.2015). And "the Legislature may impose reasonable restrictions on the freedom to contract consistent with public policy.” Marsh *492 USA Inc. v. Cook, 354 S.W.3d 764, 768 (Tex.2011). But when the Legislature statutorily imposes such a restriction on the freedom of contract, the issue for the courts is whether the contract violates the statute, not whether it violates "public policy.” See id. at 771 (addressing whether contract meets statutory "requirement for enforceability under the Act”); see also Woolsey v. Panhandle Ref. Co., 131 Tex. 449, 116 S.W.2d 675, 678 (1938) ("[A]n agreement which violates a valid statute is illegal and void.”).
The Court identifies the issue here as "whether public policy embodied in the Texas Property Code precludes enforcement of a residential-lease provision,” ante at 471, and concludes that it "cannot say the contract is unenforceable on public-policy grounds,” ante at 471; see also ante at 476 (stating that the issue is "whether the agreement runs afoul of public policy embodied in the Property Code”). I believe we should decide whether the agreement violates the statute, and we need not engage in the less certain exercise of determining whether the agreement violates public policy as reflected in the statute.

. This exception for tenant-caused conditions does not apply if the condition results from "normal wear and tear.” Tex. Prop. Code § 92.052. Since no one claims that the fire damage at issue here resulted from "normal wear and tear,” this exception to the exception is not at issue.

. The Court suggests that the evidence establishes that White "overload[ed]” the dryer with materials that contained "cooking oils,” contrary to the warnings in the dryer's instruction manual. Ante at 472. The jury, however, heard all this evidence and found that White did not negligently cause the fire. Perhaps, as the Court suggests, the jury believed White non-negligently caused the fire, but it is difficult to imagine how the jury could have concluded that White non-negligently caused the fire by overloading the dryer with items containing cooking oils contrary to the manual's instructions. In any event, for purposes of resolving the issue before us, it is enough to say that "no witness was able to explain how the fire inside the dryer drum started,” ante at 490, and the jury was not asked whether White non-negligently caused the fire.

. See also Fed. Trade Comm’n v. Morton Salt Co., 334 U.S. 37, 44-45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948) (applying "the general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a stat *495 ute generally rests on one who claims its benefits”); Eckman v. Centennial Sav. Bank, 784 S.W.2d 672, 674-75 (Tex.1990) (holding that defendant has the burden to plead and prove the applicability of statutory exception to business consumer status in DTPA claim "as an affirmative defense”); Burk Royalty Co. v. Riley, 475 S.W.2d 566, 568 (Tex.1972) (holding that the initial burden to establish a homestead exemption is on the party claiming the exemption).

. The Court also suggests that the later-enacted section 92.162 supports its construction. Ante at 487 n. 11. But that section, which addresses the repair or replacement of a dead bolt, doorknob lock, sliding door handle latch, or other security device, explicitly puts the burden on the tenant to prove that she did not damage the device. Tex. Prop. Code § 92.162(b). Section 92.052, by contrast, contains no such explicit provision placing the burden on the tenant to prove that she did not cause the condition that triggers the landlord’s unwaivable duty. Id. Every word and provision excluded from a statute must be presumed to have been excluded for a purpose. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.1981) (“Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision.” (citing Mauzy v. Legislative Redistricting Bd., 471 S.W.2d 570, 572 (Tex.1971))); see Tex. Lottery Comm'n v. First State Bank of DeQueen, 325 S.W.3d 628, 635 (Tex.2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind.”). Section 92.162, therefore, provides no support for the Court’s construction. To the contrary, it shows that the Legislature knows how to place the burden on the tenant when it intends to, yet it did not in section 92.052.

. On appeal, Philadelphia asserts that a malfunction in White's dryer caused the fire — a cause its own expert purported to rule out at trial. While White did first notice the fire in *498 her dryer, there is evidence that neither White nor her dryer actually caused the fire. Specifically, there is evidence that White’s landlord installed her dryer; that Philadelphia’s expert believed her dryer was functioning properly when the fire started; that the only material in a sample taken from her dryer after the fire was cotton; that cotton ignites at a temperature at least one hundred degrees higher than the temperature at which a properly-functioning dryer operates; that no ignitable liquids were present on the cotton in her dryer; that the apartment’s electrical outlet sparked on the first attempt to connect the dryer and tripped the apartment’s breaker; that the fire department did not inspect the apartment’s electrical system; and that Philadelphia's expert testified prior to trial that he did not rule out the apartment's electrical system as the cause of the fire.

. See Tubb v. Kramer Bros. Nurseries, 237 S.W.2d 680, 681 (Tex.Civ.App.-Waco 1951, writ ref’d n.r.e.) (recognizing contracts may be illegal because they are "made in violation of the express provisions of a statute” or *499 because they "cannot be performed without such violation”).

. See id.; see also 5 Richard A. Lord, Williston on Contracts § 12:1, at 727-40, 744-53 (4th ed.2009) (hereinafter Williston) (recognizing that a promise to do an act that would violate a statute is unenforceable, but also recognizing that many acts which themselves do not violate a statute may still not be made the subject of a contract); John Edward Murray, Jr„ Murray on Contracts § 343, at 726-27 (2nd rev. ed.1974) (hereinafter Murray) (distinguishing between statutes “which expressly, or by implication, prohibit the making of a contract” and those "which prohibit the doing of specified things, which may become the subject-matter of a contract”).

. See 15 Grace McLane Giesel, Corbin on Contracts § 82.1, at 237-43 (Joseph M. Perillo ed., rev. ed.2003); Murray § 343, at 726.

. See, e.g., Woolsey v. Panhandle Refining Co., 131 Tex. 449, 116 S.W.2d 675, 676, 678 (1938) (concluding that "great weight of authority" supported holding lifetime employment agreement "void” for waiving workers' compensation benefits); Am. Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397, 399 (1921) (concluding that provision in insurance policy which was "repugnant to the mandatory statute” and "destroy[ed] a benefit to the insured which the statute was designed to guarantee” was "void”); see also Murray § 343, at 726 (“[I]t is clear that a bargain entered into in violation of th[is type of] statute is illegal, and this is so whether or not the statute expressly declares it to be illegal.”).

. See Tubb, 237 S.W.2d at 681; see also Murray § 343, at 726; 5 Williston § 12:1, at 726-40, 744-53.

. Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146, 148-49 (1947).

. See id.

. See id.

. Id. (citations omitted) (quoting another source) (internal quotation marks omitted).

. See Tex. Prop. Code §§ 92.006(c) (providing that landlord’s duty to repair conditions affecting habitability not caused by the tenant *500 "may not be waived," except in circumstances not present here), 92.0563(b) (authorizing an award of actual damages, statutory penalties, and attorney's fees for knowingly "contracting orally or in writing with a tenant to waive the landlord’s duty to repair").

. Churchill Forge, 61 S.W.3d at 373; see also Tex. Prop. Code §§ 92.006(c), 92.0563(b).

. See, e.g., Woolsey, 116 S.W.2d at 678; Am. Nat. Ins., 230 S.W. at 399.

. See Broadley v. Mashpee Neck Marina, Inc., 471 F.3d 272, 275 (1st Cir.2006) ("The doctrine pertinent where a contract provision is unlawfully overbroad is that which permits a court to sever or divide provisions that are unlawfully over broad] as written, retaining those provisions or applications of them that are permissible.”); see also Restatement (Second) of Contracts § 184 (1981).

.The Property Code’s authorization of an award of actual damages, statutory penalties, and attorney’s fees against a landlord who knowingly violates chapter 92 by “contracting orally or in writing with a tenant to waive the landlord’s duty to repair” strongly suggests that the Legislature did not intend the Court to provide a benefit to a landlord who unknowingly violates chapter 92. Tex. Prop. Code § 92.0563(b). Because Justice Boyd's approach also avoids conferring a benefit on parties whose contracts do not conform to chapter 92, I join his dissent.